# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **DELAWARE COUNTY EMPLOYEES** | ) | |
| **RETIREMENT FUND, et al., individually,** | ) | |
| **on behalf of similarly situated shareholders,** | ) | |
| **and derivatively on behalf of,** | ) | |
| | ) | |
| **COMMONWEALTH REIT,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Civil Action No. 13-10405-DJC** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BARRY PORTNOY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____)

## MEMORANDUM AND ORDER

**CASPER, J.**           **March 26, 2014**

## I.      Introduction

Named Plaintiffs Delaware County Employees Retirement Fund ("DelCo"), Peter Felker, Edmund Sweeney, Thomas Toldrian and Howard Worsey (collectively "the Plaintiffs") are shareholders of Nominal Defendant Commonwealth REIT ("the Company"). D. 38 at 5. The Plaintiffs sued individually, on behalf of all others similarly situated, and derivatively on behalf of the Company, seeking a declaratory judgment that the arbitration clauses set forth in certain shareholder documents are invalid and unenforceable (Count 1), as well as a number of other claims. Am. Compl. (D. 38). The Defendants include the Company's management company, Reit Management and Research, LLC ("RMR"), and current and former officers of the Company

and/or members of the Company's Board of Trustees: Barry M. Portnoy, Adam D. Portnoy, John C. Popeo, William A. Lamkin, Frederick N. Zeytoonjian, Joseph L. Morea and Patrick F. Donela ("the Trustee Defendants").[1] D. 38 at 5.

The Plaintiffs have moved for a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, as to Count One of their Amended Complaint, D. 38 ¶¶ 224–29, seeking a ruling that the arbitration clause contained in the Company's Bylaws and in management agreements between the Company and RMR are invalid and unenforceable. D. 39. The Plaintiffs further seek a permanent injunction preventing the Defendants from seeking to arbitrate any of Plaintiffs' shareholder claims. D. 38, 39. For the reasons discussed below, the Court DENIES the motion for declaratory judgment and permanent injunction and concludes that the Court is precluded from deciding the issue of whether the arbitration provision in the Company's Bylaws is valid and enforceable.

## II. Factual Allegations and Procedural History

The facts recited are as alleged by the Plaintiffs, unless otherwise noted.

### A. Background

DelCo provides retirement benefit services to employees of Delaware County, Pennsylvania. D. 41 at 8. The Plaintiffs assert that DelCo is a shareholder of the Company, initially purchasing shares in 2009. Id. The remainder of the Plaintiffs are individuals who hold shares in the Company. Id. The Plaintiffs assert that they "are representative of all shareholders, including pension funds, retirees, and individuals investors." Id.

---

[1] RMR and the Trustee Defendants are collectively referred to as "the Defendants."

The Company, a nominal Defendant, is a Maryland real estate investment trust ("REIT") with its principal executive office in Newton, Massachusetts. Id. at 9. It is controlled by RMR, which is owned by Defendants Barry and Adam Portnoy (collectively, "the Portnoys"). Id.

**B.    Adoption of the Arbitration Clauses**

The Company's Declaration of Trust ("the Declaration") is the Company's governing document and "sets forth the rights, responsibilities and liabilities of the Trustees to the Company and its shareholders." D. 41 at 12 (citing Third Amendment and Restatement of Declaration of Trust, D. 40-9, hereinafter "the Declaration"). The Declaration does not contain any provision requiring shareholders to arbitrate claims brought against the Trustees. D. 41 at 12–13 (citing the Declaration). Section 3.3 of the Declaration states that "Trustees may make or adopt and from time to time amend or repeal Bylaws . . . not inconsistent with law or with this Declaration, containing provisions relating to the business of the Trust and the conduct of its affairs . . . ." Id. at 13 (quoting the Declaration, D. 40-9 at 21).

On November 6, 2009, the Trustee Defendants amended the Company's Bylaws (the "Bylaws") to include the following arbitration clause ("the Arbitration Bylaw"):

> Section 16.1.    Procedures for Arbitration of Disputes.    Any disputes, claims or controversies brought by or on behalf of any shareholder of the Trust (which, for purposes of this ARTICLE XVI, shall mean any shareholder of record or any beneficial owner of shares of the Trust, or any former shareholder of record or beneficial owner of shares of the Trust), either on his, her or its own behalf, on behalf of the Trust or on behalf of any series or class of shares of the Trust or shareholders of the Trust against the Trust or any Trustee, officer, manager (including Reit Management & Research LLC or its successor), agent or employee of the Trust, including disputes, claims or controversies relating to the meaning, interpretation, effect, validity, performance or enforcement of the Declaration of Trust or these Bylaws (all of which are referred to as "Disputes") or relating in any way to such a Dispute or Disputes shall, on the demand of any party to such Dispute, be resolved through binding and final arbitration in accordance with the Commercial Arbitration Rules (the "Rules") of the American Arbitration Association ("AAA") then in effect, except as those Rules may be modified in this ARTICLE XVI. For the avoidance of doubt, and not as a limitation, Disputes are intended to include derivative actions against Trustees, officers or managers of the Trust and class actions by shareholders against those

individuals or entities and the Trust.  For the avoidance of doubt, a Dispute shall include a Dispute made derivatively on behalf of one party against another party.

D. 41 at 14–15; see January 10, 2012 Amended and Restated Bylaws (D. 40-10 at 49) ("the Amended Bylaws").  The following provision was also added to Article XVI of the Bylaws:

> Section 16.6    Costs and Expenses.  . . . [E]ach party involved in a Dispute shall bear its own costs and expenses (including attorney's fees), and the arbitrators shall not render an award that would include shifting of any costs or expenses (including attorneys' fees), or, in a derivative case or class action, award any portion of the Trust's award to the claimant or the claimant's attorneys.  Each party (or, if there are more than two parties to the Dispute, all claimants, on the one hand, and all respondents, on the other hand, respectively) shall bear the costs and expenses of its (or their) selected arbitrator and the parties (or, if there are more than two parties to the Dispute, all claimants, on the one hand, and all respondents, on the other hand) shall equally bear the costs and expenses of the third appointed arbitrator.

Id. at 50.  Both of these changes are reflected in the Amended Bylaws.  See D. 40-10.

RMR also amended its business management agreement with the Company around June 2009 to include the following arbitration clause:

> 28.    Arbitration.
>
> (a) Any disputes, claims or controversies between the parties (i) arising out of or relating to this Agreement or the provision of services by the Manager pursuant to this Agreement, or (ii) brought by or on behalf of any shareholder of the Company (which, for purposes of this Section 28, shall mean any shareholder of record or any beneficial owner of shares of the Company, or any former shareholder of record or beneficial owner of shares of the Company), either on his, her or its own behalf, on behalf of the Company or on behalf of any series or class of shares of the Company or shareholders of the Company against the Company or any trustee, officer, manager (including Manager or its successor), agent or employee of the Company, including disputes, claims or controversies relating to the meaning, interpretation, effect, validity, performance or enforcement of this Agreement, including this arbitration agreement, the Declaration of Trust or the Bylaws (all of which are referred to as "Disputes"), or relating in any way to such a Dispute or Disputes shall, on the demand of any party to such Dispute be resolved through binding and final arbitration in accordance with the Commercial Arbitration Rules (the "Rules") of the American Arbitration Association ("AAA") then in effect . . .
>
> ***
>
> Except to the extent expressly provided by this Agreement or as otherwise agreed by the parties, each party involved in a Dispute shall bear its own costs and expenses

(including attorneys' fees), and the arbitrators shall not render an award that would include shifting of any such costs or expenses (including attorneys' fees) or, in a derivative case or class action, award any portion of the Company's award to the claimant or the claimant's attorneys. Each party (or, if there are more than two parties to the Dispute, all claimants, on the one hand, and all respondents, on the other hand, respectively) shall bear the costs and expenses of its (or their) selected arbitrator and the parties (or, if there are more than two parties to the Dispute, all claimants, on the one hand, and all respondents, on the other hand) shall equally bear the costs and expenses of the third appointed arbitrator.

D. 41 at 14–15 (citing December 11, 2012 Amended and Restated Business Management Agreement, D. 40-4 at 17–19). The Plaintiffs assert that RMR and the Portnoys have since inserted this same arbitration clause into every management agreement between the Company and RMR, or between the Company and RMR-controlled entities. D. 41 at 15.

On January 10, 2012, the Trustees again amended the Bylaws to require that shareholders who select an arbitrator do so within fifteen days of making an arbitration demand; otherwise, the Trustees would choose the arbitrator. Id. at 15–16 (citing Amended Bylaws, D. 40-10). The Trustees also added this amendment to the RMR management agreements. D. 41 at 16 (citing RMR management agreements, D. 40-4; D. 40-5). The Amended Bylaws further provide that "these Bylaws may be amended or repealed or new or additional Bylaws may be adopted only by the vote or written consent of a majority of the Trustees." D. 41 at 13 (citing Amended Bylaws, D. 40-10 at 47).

## C.       Initiation of Litigation and Arbitration Proceedings

On February 28, 2013, the Plaintiffs brought this derivative suit on behalf of the Company alleging that the Defendants breached their fiduciary duties and engaged in self-dealing. Id. at 11; D. 1. The Plaintiffs also sought to invalidate the arbitration clauses in both the Bylaws and the RMR management agreements on the basis that they were invalid and unenforceable. Id. On March 4, 2013, the Plaintiffs received an arbitration demand from the

Trustee Defendants to resolve the dispute, citing the arbitration clause set forth in the Bylaws. Id.

On March 18, 2013, the Court granted the parties' stipulation to stay the arbitration pending its determination of whether the arbitration clause was valid and enforceable. D. 34. On March 29, 2013, the Plaintiffs moved for a declaratory judgment and/or injunctive relief. D. 39. The Court subsequently entered the parties' stipulation to allow RMR to join the arbitration stay and to join the Trustee Defendants in opposing the Plaintiffs' instant motion for a declaratory judgment and permanent injunction. D.44. After a hearing, the Court took the Plaintiffs' motion under advisement. D. 86.

## III.    Standards of Review

### A.    Declaratory Judgment

The Declaratory Judgment Act allows "any court of the United States, upon the filing of an appropriate pleading, [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201. "Declaratory judgment actions, being statutory creatures, are neither inherently legal nor inherently equitable." El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992). "Looking to the basic nature of the plaintiffs' case and the manner in which the issues would likely have arisen if the Declaratory Judgment Act had been stillborn," the Court may apply the "traditional principles of equity jurisprudence" if the relief sought is "equitable in nature." Id. "Especially when matters of great public moment are involved, declaratory judgments should not be pronounced unless the need is clear, not remote or speculative." Id. at 494 (citations and quotations omitted). "Federal courts should not rush to

judgment when declaratory relief would produce uncoordinated and unnecessarily disruptive adjudications of disputes in which state and federal issues are intertwined." Id. at 497–98 (1st Cir. 1992) (citations and quotations omitted).

Because the Plaintiffs are asking the Court to provide declaratory relief as a matter of law, the Court may treat the motion for declaratory judgment as one for summary judgment on these issues. Riva v. Ashland, Inc., No. 09-cv-12074-DJC, 2013 WL 1222393, at *9 (D. Mass. Mar. 26, 2013); Jenkins Starr, LLC v. Cont'l Ins. Co., Inc., 601 F. Supp. 2d 344, 346 (D. Mass. 2009). "Therefore, the burden is upon [the Plaintiffs] to show that there is no genuine dispute as to any material fact and that [they are] entitled to judgment as a matter of law." Riva, 2013 WL 1222393, at *9 (citing Fed. R. Civ. P. 56(a)).

**B.      Permanent Injunction**

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that [for a preliminary injunction] the plaintiff must show a likelihood of success on the merits rather than actual success." Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 34 (1st Cir. 2011) (citation omitted). Therefore, to obtain a permanent injunction, the Plaintiffs must show that: (1) they have succeeded on the merits of their claim; (2) they are likely to suffer irreparable harm without an injunction; (3) the balance of harms weighs in their favor; and (4) an injunction is in the public's interest. Id. at 32; United States v. Mass. Water Res. Auth., 256 F.3d 36, 50 n.15 (1st Cir. 2001). "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 130 S. Ct. 2743, 2761 (2010).

## IV.    Discussion

The Defendants argue that the Court is precluded from deciding the question of whether the arbitration clause at issue here is invalid because a Maryland court has already resolved such issue and therefore, the Plaintiff's challenge to the Arbitration Bylaw here is barred by *res judicata*.  D. 67 at 2; D. 79.  The Defendants have since moved to file, as supplemental authority, a second decision issued by the same court compelling arbitration.[2]  D. 96.  The Defendants also argue that the Plaintiffs fail on the merits of their motion.  The Court addresses each of these arguments.

### A.    Res Judicata Bars the Court From Deciding Whether the Arbitration Clause in the Bylaws is Invalid

#### 1.    The <u>Corvex</u> and <u>Katz</u> Decisions

The Court will provide a brief summary of the two Baltimore City Circuit Court decisions examining the instant issue.  In <u>Corvex Management LP v. Commonwealth REIT</u>, No. 24-C-13-001111 (Cir. Ct. Balt., May 8, 2013) ("<u>Corvex</u>"), two institutional shareholders of the Company brought suit against the Trustee Defendants seeking declaratory and injunctive relief, alleging that the Trustee Defendants breached their fiduciary obligations.  <u>Corvex</u>, at 1–3.  In response, the Trustee Defendants initiated arbitration proceedings pursuant to the Bylaws.  <u>Id.</u> at 3.  The Plaintiffs filed a petition to stay the arbitration claiming that Article XVI of the Bylaws, which requires shareholders to arbitrate disputes, was invalid and unenforceable.  <u>Id.</u> at 3–4.  The court denied the petition to stay arbitration, finding that the arbitration clause was enforceable on a number of grounds.

_____

[2] The Court ALLOWS *nunc pro tunc* the motion for leave to file supplemental authority, D. 96, and has considered the substance of same in deciding this motion.

On February 19, 2014, the same judge decided <u>Katz v. Commonwealth REIT</u>, No. 24-C-13-001299 (Cir. Ct. Balt., Feb. 19, 2014) ("<u>Katz</u>").  In <u>Katz</u>, the plaintiffs were individual shareholders and a pension fund, self-described as "ordinary shareholders," who brought a consolidated class and derivative suit against the Trustee Defendants alleging that the defendants breached their fiduciary duties.  <u>Id.</u> at 1–2, 4–5.  The defendants initiated arbitration to resolve the dispute, citing their authority under Article XVI of the Bylaws.  <u>Id.</u> at 8.  The plaintiffs sought to block the arbitration proceedings, arguing that the arbitration bylaws were unenforceable.  <u>Id</u>.  The crux of the plaintiffs' argument in <u>Katz</u> was that the <u>Corvex</u> holding did not apply to them because in the prior case, the plaintiffs were institutional shareholders attempting a hostile takeover "who acquired shares with actual knowledge of the Arbitration Bylaws."  <u>Id.</u> at 8–9.  The <u>Katz</u> plaintiffs, on the other hand, were "ordinary shareholders who did not acquire their shares with knowledge of the Arbitration bylaws."  <u>Id.</u> at 9.  The <u>Katz</u> court rejected this argument and ruled that because the ordinary shareholders had constructive knowledge of the arbitration bylaw, the provision was also enforceable against them.

## 2. *Res Judicata Applies to the Invalidity of the Bylaws*

The Defendants argue that the <u>Corvex</u> opinion "conclusively resolves DelCo's challenge to the Arbitration Bylaw."  D. 67; D. 79.  They further argue that the <u>Katz</u> opinion "is directly pertinent to the issues raised in Delco's Motion for Declaratory Judgment."  D. 96-1.  The Court agrees, to the extent that the <u>Katz</u> decision precludes this Court from deciding whether the Arbitration Bylaw was valid and enforceable.  For the reasons discussed below, however, the Court cannot so conclude as to the arbitration provisions in the RMR management agreements.

First, the Court acknowledges the Plaintiffs' argument that under Fed. R. Civ. P. 8(c), *res judicata* should generally be raised as an affirmative defense.  An exception to this rule applies,

however, when "the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed." <u>Davignon v. Clemmey</u>, 322 F.3d 1, 15 (1st Cir. 2003). "[T]he court must examine the totality of the circumstances and make a practical, commonsense assessment about whether Rule 8(c)'s core purpose—to act as a safeguard against surprise and unfair prejudice—has been vindicated." <u>Mass. Asset Fin. Corp. v. MB Valuation Servs., Inc.</u>, 248 F.R.D. 359, 361 (D. Mass. 2008) (citation and quotations omitted).

Here, the Defendants' answers were due on April 8, 2013. D. 35. The Defendants filed their oppositions to the instant motion on April 29, 2013. D. 45; D. 49; D. 51. The Maryland court did not issue its opinion in <u>Corvex</u> until May 8, 2013 (and <u>Katz</u> was not decided until February 19, 2014). The Trustee Defendants raised their *res judicata* defense in a sur-reply filed on September 6, 2013. D. 67. Given that "Rule 8(c) is designed to provide plaintiffs with adequate notice of a defendant's intention to litigate an affirmative defense, thereby affording an opportunity to develop any evidence and offer responsive arguments relating to the defense," <u>Davignon</u>, 322 F.3d at 15, there is no prejudice to the Plaintiffs in allowing the Defendants to assert the defense when they did. The Court did not hear arguments on this motion until November 20, 2013. D. 86. The Plaintiffs have made multiple filings after the Trustee Defendants filed their sur-reply, D. 70, 77–78, 81, 85, 87, 92, 94, 97, 102, and the *res judicata* issue was addressed by both parties at the hearing. Transcript of November 26, 2013 Hearing (D. 88 at 15–18, 23–24). In light of these circumstances, the Court finds that the Plaintiffs had ample opportunity to address the defense, which, because of the timing of the <u>Corvex</u> decision, the Trustee Defendants were not able to assert either in their answers or in their original oppositions to the instant motion. <u>See</u> <u>Casas Office Machines, Inc. v. Mita Copystar Am., Inc.</u>, 961 F. Supp. 353, 357 (D.P.R. 1997) (concluding that defendants did not waive *res judicata*

defense by failing to plead it in their answer because plaintiff had sufficient notice of the defense and "ample opportunity" to present arguments in response); Boston Scientific Corp. v. Schneider (Europe) AG, 983 F. Supp. 245, 254 (D. Mass. 1997), dismissed sub nom. on other grounds, Boston Scientific Corp. v. Schneider (USA) Inc., 152 F.3d 947 (Fed. Cir. 1998) (determining that *res judicata* defense was not waived because raising it was not an "unfair surprise" and plaintiff was not "unduly prejudiced because it has had ample opportunity to respond to the preclusion arguments by way of briefs and oral argument").

Turning to the merits of the Trustee Defendants' preclusion argument, "[u]nder federal law, a state court judgment receives the same preclusive effect as it would receive under the law of the state in which it was rendered." Dillon v. Select Portfolio Servicing, 630 F.3d 75, 80 (1st Cir. 2011). Because Corvex and Katz were decided by a Maryland state court, the Court applies Maryland law to determine whether the Plaintiffs' claim is precluded. To demonstrate that *res judicata* applies, the Trustee Defendants must show that: (1) the parties in the instant litigation are the same or in privity with the parties in the prior action; (2) the claim presented in the instant action is identical to the issue that was decided or could have been raised and decided in the prior action; and (3) a final judgment on the merits was entered in the prior action. R & D 2001, LLC v. Rice, 402 Md. 648, 663 (2008).

i.      Privity

As noted above, for the privity element to be satisfied, the parties in the Maryland cases and in the instant case must be the same or in privity with one another. The parties do not dispute this element as to the Defendants.[3] The parties do dispute, however, whether the

---

[3] The Corvex and Katz Defendants were identical to the Trustee Defendants here, except that in this action, the Plaintiffs sued two additional Trustees, John C. Popeo and Patrick F. Donela. Katz, at 1; Corvex at 1.

shareholder-plaintiffs, who are not identical in any of the three cases, are in privity with one another.  The Court finds that while none of the plaintiffs in the three cases are identical, as shareholders of the Company seeking the same judicial remedy, they are in privity for *res judicata* purposes.

Maryland courts have held that "for the purpose of the application of the rule of res judicata, the term 'parties' includes all persons who have a direct interest in the subject matter of the suit, and have a right to control the proceedings, make defense, examine the witnesses, and appeal if an appeal lies. . . . [W]here persons, although not formal parties of record, have a direct interest in the suit, and in the advancement of their interest take open and substantial control of its prosecution, or they are so far represented by another that their interests receive actual and efficient protection, any judgment recovered therein is conclusive upon them to the same extent as if they had been formal parties."  Ugast v. La Fontaine, 189 Md. 227, 232–33 (1947) (citations omitted); see Cochran v. Griffith Energy Servs., Inc., 426 Md. 134, 142 (2012) (applying Ugast).

First, Plaintiffs contended at oral argument that the plaintiffs in Corvex, who were institutional shareholders who purchased shares to initiate a hostile takeover of the Company, were not in privity with the "ordinary shareholders" who brought the instant lawsuit.  D. 88 at 17.  The decision in Katz, however, has undercut the force of this argument where that tribunal rejected the attempt of the plaintiffs in that case, individual shareholders and a pension fund and self-described as "ordinary shareholders," to differentiate themselves from the Corvex plaintiffs on the same grounds.  Katz, at 1–2, 8–9.

Further, in concluding that the Plaintiffs had a "direct interest" in the prior suit such that "they [were] so far represented . . . that their interests receive[d] actual and efficient protection," Ugast, 189 Md. at 232, the Court notes that in both Katz and the instant case, the shareholders

brought derivative lawsuits on behalf of the Company and other shareholders.[4] "The derivative form of action permits an individual shareholder to bring suit to enforce a corporate cause of action against officers, directors, and third parties." Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 95 (1991) (citation, quotations and emphasis omitted). "The action is 'derivative' because it is brought for the benefit of the corporation, not for the shareholder plaintiff." Bennett v. Damascus Cmty. Bank, No. 267722-V, 2006 WL 2458718, at *2 (Md. Cir. Ct. Apr. 6, 2006). Therefore, "the purpose of the derivative action [is] to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of faithless directors and managers." Kamen, 500 U.S. at 95 (citation and quotations omitted). That is, by bringing a derivative lawsuit on behalf of the Company and the Company's shareholders, the plaintiffs in Katz were representing the interests of the Company.

The Court finds persuasive the analysis on this point in In re Sonus Networks, Inc. S'holder Derivative Litig., 422 F. Supp. 2d 281, 284 (D. Mass. 2006), aff'd sub nom., 499 F.3d 47 (1st Cir. 2007). There, shareholders brought a derivative action in state court alleging that several of the company's officers and directors engaged in misconduct. Id. at 284. The state court dismissed the action on the grounds that the plaintiffs failed to make a demand on the directors, which was a prerequisite to filing suit. Id. Different shareholders then brought a derivative action in federal court raising largely the same claims of board and management misconduct, but also raising new factual allegations. Id. There, the plaintiffs argued that they were not in privity with the state plaintiffs because they had "'different lawyers and filed a different lawsuit in a different court armed with a different set of facts.'" Id. at 291. The federal

---

[4] The Court recognizes that some of the plaintiffs in the Katz case brought a direct suit, while others brought a derivative suit, Katz, at 7.

court held that the "determination in the state court shareholder derivative litigation—that the failure to make demand upon directors may not be excused—precludes different shareholder plaintiffs in a parallel federal derivative suit from relitigating the question of demand futility." Id. at 284. In so ruling, the court noted that "because derivative litigation [was] the procedural vehicle [the plaintiffs] [had] chosen, it is [the company] that is 'the true party in interest in both cases.'" Id. at 291 (quoting Clark v. Lacy, 376 F.3d 682, 686 (7th Cir. 2004)). The court further noted that case law from other jurisdictions supported the conclusion that "'[n]onparty shareholders are usually bound by a judgment in a derivative suit on the theory that the named plaintiff represented their interests in the case.'" In re Sonus Networks, 422 F. Supp. 2d at 291 (quoting Cramer v. General Telephone & Electronics Corp., 582 F.2d 259, 269 (3d Cir. 1978), and citing Schnitzer v. O'Connor, 274 Ill. App. 3d 314, 326 (1995); Nathan v. Rowan, 651 F.2d 1223, 1226 (6th Cir. 1981); Parkoff v. General Telephone & Electronics Corp., 53 N.Y.2d 412, 420 (1981); Ratner v. Paramount Pictures, Inc., 6 F.R.D. 618, 619 (S.D.N.Y. 1942); Dana v. Morgan, 232 F. 85, 85 (2d Cir. 1916); see Henik ex rel. LaBranche & Co., Inc. v. LaBranche, 433 F. Supp. 2d 372, 380 (S.D.N.Y. 2006) (concluding that "privity among shareholder plaintiffs in the derivative litigation context presents an atypical situation. In ordinary lawsuits there are often factors differentiating a plaintiff in one suit from a plaintiff in an analogous suit against the same defendant, such that the standing analysis in the two actions would likely differ. On the other hand, in shareholder derivative actions, a plaintiff shareholder sues on behalf of the corporation, and it is the shareholder that is the 'true party in interest in both cases'") (quoting In re Sonus Networks, 422 F. Supp. 2d at 291); Levin ex rel. Tyco Int'l Ltd. v. Kozlowski, 831 N.Y.S.2d 354 (Sup. Ct. 2006), aff'd sub nom., 846 N.Y.S.2d 37 (2007) (concluding that shareholders in a derivative state court action were in privity with shareholder in federal

derivative action). While there does not appear to be Maryland cases on this precise point, for the foregoing reasons, the Court concludes that the interest of the Plaintiffs here, as shareholders representing the interests of the Company, were represented by the shareholders in <u>Katz</u>, who also brought a derivative suit representing the interests of the Company.

ii.     Identical Claims

The Court also concludes that the shareholders' claims are identical, insofar as the Plaintiffs seek to invalidate the Arbitration Bylaw. In <u>Katz</u>, the court decided that Section 16.1 of the Bylaws was enforceable against "individual beneficial" shareholders, i.e., non-institutional shareholders who did not buy shares with the intention of a initiating hostile takeover. <u>Katz</u>, at 8–9. The Plaintiffs in this case seek to litigate the exact claim – "[t]o the extent the Court determines that the Arbitration Clause[] in the Bylaw [is] oppressive, unlawful and procured improperly, the Arbitration Clause[] should be void and [have] no effect." D. 38 ¶¶ 229; <u>see also</u> Motion for Declaratory Judgment, seeking in part to "invalidat[e] the arbitration clause in the CWH Bylaws." D. 39 at 1.

iii.     Final Judgment

Finally, the <u>Katz</u> decision constitutes a final judgment on the merits. The decision compelled arbitration, <u>Katz</u>, at 44, and Maryland courts have held that an order compelling arbitration is considered a final judgment. <u>Walther v. Sovereign Bank</u>, 386 Md. 412, 422 (2005); <u>see also</u> <u>Addison v. Lochearn Nursing Home</u>, LLC, 411 Md. 251, 256 (2009); <u>Town of Chesapeake Beach v. Pessoa Construction Co., Inc.</u>, 330 Md. 744, 750–54 (1993).

iv.     Policy Concerns

As a final point on the *res judicata* issue, the Court notes:

Res judicata protects the courts, as well as the parties, from the attendant burdens of relitigation. This doctrine avoids the expense and vexation attending multiple

lawsuits, conserves the judicial resources, and fosters reliance on judicial action by minimizing the possibilities of inconsistent decisions.

Cochran v. Griffith Energy Servs., Inc., 426 Md. 134, 140 (2012) (citing Anne Arundel Cnty. Bd. of Educ. v. Norville, 390 Md. 93, 106–07).  Here, several cases have been brought before at least two tribunals, one state court and one federal court, asking the identical question and seeking identical relief.  In light of these concerns for judicial efficiency, consistency of outcome, and the analysis discussed above, the Court finds that *res judicata* serves its intended policy purpose in this case.

For these reasons, the Court finds that it is precluded from determining whether the arbitration provision in the Company's Bylaws is valid and enforceable and DENIES the Plaintiffs' motion as to the enforceability of the arbitration provision in the Bylaws.

### B.    The Plaintiffs' Motion Fails on the Merits as to the Bylaws

The Court concludes, however, that even if *res judicata* did not apply, the Plaintiffs' arguments, arising under Maryland law, D. 40-10 at 50,[5] fail on the merits.[6]

---

[5] Both parties apply Maryland law in their analysis of the Plaintiffs' arguments.

[6] The Court also notes that it need not analyze every new argument raised in the Plaintiffs' reply brief, D. 56, or in the Plaintiffs' "status reports." D. 94.  See Napert v. Gov't Employees Ins. Co., No. 13-10530-FDS, 2013 WL 3989645, at *2 n.4 (D. Mass. Aug. 1, 2013) (citing Noonan v. Wonderland Greyhound Park Realty LLC, 723 F. Supp. 2d 298, 349 (D. Mass. 2010) (nothing that "[t]he purpose of a reply memorandum is not to file new arguments that could have been raised in a supporting memorandum"); Wills v. Brown University, 184 F.3d 20, 27 (1st Cir. 1999).  While the Court understands that the Defendants' *res judicata* argument was raised in sur-replies, as discussed above, this defense was not available to the Defendants when they initially responded to the instant motion.  The Court need not address substantive arguments raised in the Plaintiffs' reply brief, see, e.g., D. 56 at 7, 9-13, 13-15, that were available to them at the time they filed their motion and which do not respond to the arguments raised by the Defendants in their oppositions.

To start, the Court's role in deciding whether an arbitration agreement is enforceable is determining whether the parties reached an agreement to arbitrate. Balt. Cnty. Fraternal Order of Police Lodge No 4 v. Balt. Cnty. 429 Md. 533, 549 (2012); Syndor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 305 (4th Cir. 2001) (under the Federal Arbitration Act, "federal courts must first decide whether the parties entered into an agreement to arbitrate their disputes"). The Court may not, in answering this threshold question, "stray into the merits of [the] underlying disagreements." Cheek v. United Healthcare of the Mid-Atl., Inc., 378 Md. 139, 155, 159–60 (2003).

Under Maryland law, arbitration is "'the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them.'" Id. at 146 (quoting Gold Coast Mall, Inc. v. Larmar Corp., 298 Md. 96, 103 (1983)). Therefore, "[t]he determination of whether there is an agreement to arbitrate, of course, depends on contract principles since arbitration is a matter of contract, and a party cannot be required to submit any dispute to arbitration that it has not agreed to submit." Id. at 147. As with all contracts, the Court must find that there was an offer, acceptance and consideration. See Maryland Supreme Corp. v. Blake Co., 279 Md. 531, 539 (1977). The Plaintiffs assert several grounds for why these requirements were not met in this case.

### 1. Mutual Consent

The Plaintiffs first argue that they "cannot be bound by a unilaterally imposed arbitration clause in bylaws that [they] never expressly consented to and/or approved." D. 41 at 21. Courts must apply basic principles of contract law in determining whether an arbitration agreement was mutually agreed upon. AT&T Mobility v. Concepción, 131 S. Ct. 1740, 1742 (2011) (noting that "courts must place arbitration agreements on an equal footing with other contracts"). The

Court agrees that jurisprudence from Maryland and other courts suggest that in these circumstances, "constructive knowledge, constructive notice, and knowledge/notice through incorporation-by-reference are adequate to inform and bind a party to a contract," Corvex, at 15–16, thereby satisfying mutuality. Katz, at 22; see Wolf v. Crystal, 239 Md. 22, 27–28 (1965) (holding that a shareholder was bound by the company's bylaws because a passbook she received when she opened her bank account stated that her stock certificate was subject to the bylaws); Harby ex rel. Brooks v. Wachovia Bank, N.A., 172 Md. App. 415, 422–23 (2007) (bank customer consented to arbitration by signing an initial terms and conditions agreement that incorporated by reference the arbitration agreement); Spence v. Medical Mutual Liability Insurance Society of Md., 65 Md. App. 410, 419–20 (1985) (presuming that insurance customers had knowledge of company's bylaws, even if the bylaws were not distributed to the customers).

Under Maryland law, the Declaration of Trust is the governing document required to form a REIT. Md. Code Ann., Corps. and Ass'ns § 8-101(b). The parties do not dispute that, consistent with the Maryland REIT statute, Article 3.3 of the Company's Declaration allows the Trustee Defendants to "make or adopt and from time to time amend or repeal Bylaws . . . not inconsistent with the law or with this Declaration . . . ." D. 40-9 at 21; Md. Code Ann., Corps. and Ass'ns § 8-301(11). Here, the Trustee Defendants used this authority under the Declaration to add the Arbitration Bylaw. While the Plaintiffs contend that the Trustee Defendants "could have sought shareholder approval to [first] amend the Declaration of Trust," the Plaintiffs have not offered any authority requiring the Trustee Defendants to do so. D. 41 at 21. Further, while the Plaintiffs argue that the "ability to unilaterally bind shareholders to arbitration falls outside the scope of a board's bylaw-making authority under Section 8-301(11) of Maryland REIT law" on the grounds that the Board of Trustees was not regulating the business and affairs of the trust,

D. 56 at 9–10, the Plaintiffs have not met their burden of proving this as a matter of law. While the Plaintiffs direct the Court to one Maryland case standing for the proposition that a corporation's interference with or destruction of "the obligations of contracts or rights thereunder or vested rights" is barred, D. 56 at 10 (citing Kenney v. Morgan, 22 Md. App. 698, 713–14 (Md. Ct. Spec. App. 1974)), as discussed below, the Court concludes that the Plaintiffs have not shown that the Arbitration Bylaw interferes with their rights to bring a derivative claim against the Trustee Defendants or any other right under the Declaration.

To the extent the Plaintiffs argue that they had no notice of the Bylaw amendments (either actual or constructive) because "nearly every Plaintiff purchased . . . common stock before the arbitration clause was inserted into the Bylaws," D. 41 at 21 n.5, this argument is unavailing. First, the Plaintiffs do not dispute that each of the Company's share certificates included a provision stating that shareholders were "to be bound by all of the provisions of the Declaration of Trust and Bylaws of the Trust and any amendments thereto." Sample Share Certificate (D. 46-1 at 3). While the Plaintiffs argue that "[p]urchasers of shares in a public company like CWH do not receive a stock certificate," D. 56 at 25, the only support the Plaintiffs cite for this argument is a treatise stating that shares are "typically represented by only one or more immobilized jumbo stock certificates," which does not address whether the Plaintiffs in this case were issued a stock certificate. See D. 55-7 at 7.[7] Furthermore, Maryland law suggests that a party to a contract is presumed to have knowledge of company bylaws incorporated into the contract, even if they are not provided with a copy of them. See Spence, 500 A.2d at 1070 (ruling that when a company's charter and bylaws were part of an insurance contract, "even though the by-laws may not have been distributed to appellants, they are presumed to have

_____

[7] Likewise, the affidavit submitted in support of the Plaintiffs' status report, D. 94-2 at 5, does not discuss the Company's stock certificates in this case.

knowledge of them"). The Company's "stockholders assent to not having to assent to board-adopted bylaws. . . . Accordingly, Plaintiffs purchased their shares with constructive knowledge that the Arbitration Bylaws were in effect and that their shares were subject to them." <u>Katz</u>, at 29. Moreover, the Court notes that the Bylaws and their amendments were filed publicly. <u>See</u> February 27, 2012 Form 10-K (D. 40-11).

In support of their argument that "under [] basic principles of contract law, an arbitration provision unilaterally adopted by a board in corporate bylaws cannot be enforceable against non-consenting shareholders," D. 41 at 19, the Plaintiffs urge the Court to follow <u>Kirleis v. Dickie McCamey & Chilcote PC</u>, 560 F.3d 156, 163 (3d Cir. 2009), in which the Third Circuit held that a shareholder's constructive notice of an arbitration requirement did not suffice as an "explicit agreement . . . essential to the formation of an enforceable arbitration contract." <u>Kirleis</u>, however, does not warrant a different outcome here. That is, whatever persuasive value <u>Kirleis</u> may have had is certainly curtailed by the Third Circuit's subsequent recognition in <u>Century Indemnity Co. v. Lloyd's</u>, 584 F.3d 513, 531–32 (3d Cir. 2009) that, under the FAA and Supreme Court precedent, it could not require arbitration agreements to be "express" and "unequivocal" to be enforced because to do so would "impermissibly . . . require more of arbitration agreements than of contracts generally to be enforced whenever the standard differed from the applicable state-law principles of contract law." <u>Id.</u> at 532; <u>see</u> <u>Katz</u>, at 21–22 (discussing <u>Kirleis</u> and <u>Century Indemnity</u>).

The Plaintiffs also contend that "many of the Plaintiffs had no notice whatsoever (actual, constructive or otherwise)" because "nearly every Plaintiff purchased CWH common stock before the arbitration clause was inserted into the Bylaws." D. 41 at 21 n.5. As discussed above, however, the stock certificates specifically notify shareholders that they would be bound

by the provisions of the Declaration and Bylaws, including Bylaw amendments, D. 46-1 at 3, and the bylaws were publicly available. The Court likewise is not persuaded by the Plaintiffs' reliance on Galaviz v. Berg, 763 F. Supp. 2d 1173, 1170 (N.D. Cal. 2011). The Galaviz court held that because the directors adopted a disputed bylaw "after the alleged wrongdoing took place," there was no mutual consideration "at least with respect to shareholders who purchased their shares prior to the time the bylaw was adopted." Id. at 1171. The Plaintiffs here, however, acknowledge that "the timing of a shareholder's stock purchase is a meaningless distinction in this context and will lead to inconsistent and contradictory rights and remedies for shareholders of the same company."[8] D. 41 at 21 n.5. For the reasons discussed above, the Court concludes that the shareholders had constructive notice of the Bylaws and therefore, of the Arbitration Bylaw. See also Rushing v. Gold Kist, Inc., 567 S.E.2d 384, 387–88 (Ga. Ct. App. 2002) (arbitration clause added to bylaws after membership agreement was signed was valid because member agreed to be subject to bylaws and bylaws "hereafter in effect").[9] As the Katz decision articulated, "the timing of the Arbitration Bylaw has no effect on whether Plaintiffs are bound to it. Rather, the key consideration is the fact that the Declaration of Trust at the time of Plaintiffs' purchases informed them of the very broad powers granted to the Trustee Defendants, and

---

[8] The Court further notes that not all of the Plaintiffs bought their shares before the Bylaws were amended. See D. 41 at 3 (stating that Toldrian purchased his 70,000 shares in 2011, after the Bylaw was adopted in 2009).

[9] The Plaintiffs also rely on a December 11, 2011 "no-action request" opinion letter written in unrelated litigation by the Trustee Defendants' law firm, D. 41 at 22, which predicts that [a]lthough no Delaware court has addressed the question, it is unlikely that a Delaware court would conclude that the mere acquisition of shares of stocks in a corporation whose bylaws provide for mandatory arbitration would constitute a clear expression of an intent to arbitrate." D. 40-12 at 6 (citation and quotations omitted). The letter, which is not binding authority in this or any other case, makes a prediction as to the outcome of Delaware law and expressly states that the letter is not intended to opine "as to the laws of any other jurisdiction." Id. at 4. The Court finds that the letter has no persuasive value as to the application of Maryland law.

particularly, of the power to 'make or adopt and from time to time amend or repeal Bylaws not inconsistent with the law or with this Declaration . . . .'" <u>Katz</u>, at 43.

          *2.    Consideration*

      The Plaintiffs next argue that the Arbitration Bylaw is not enforceable because it was not supported by consideration. D. 41 at 23.

      As noted in <u>Katz</u>, "mutuality 'does not require an exactly even exchange of identical rights and obligations between the two contracting parties.'" <u>Katz</u>, at 30 (quoting <u>Walther v. Sovereign Bank</u>, 386 Md. 412, 433 (2005) (concluding that mutuality existed even though an arbitration provision allowed only one party to initiate litigation for certain claims)). The Court need only find that the promise has some value, <u>Harford Cnty. v. Town of Bel Air</u>, 348 Md. 363, 383 (1998), and not necessarily the "identical mutuality of remedy." <u>Walther</u>, 386 Md. at 433. Here, the Arbitration Bylaw requires both sides to arbitrate a shareholder dispute at the demand of the other. D. 40-10 at 49. "Defendants would be obligated to arbitrate if the Plaintiffs so requested, even if the Defendants wished to litigate the dispute before a court." <u>Katz</u>, at 31–32.

      Plaintiffs' reliance on <u>Noohi v. Tool Brothers, Inc.</u>, 708 F.3d 599 (4th Cir. 2013), and <u>Cheek</u>, 378 Md. 139, is misplaced. In <u>Noohi</u>, the arbitration clause bound only one side to arbitration, waiving the buyer's right to litigate, but not the seller's. <u>Noohi</u>, 708 F.3d at 610; <u>see Katz</u>, at 33 (distinguishing <u>Noohi</u>). While <u>Cheek</u>, on its face, may support the Plaintiffs' proposition, the arbitration provision in <u>Cheek</u> could be revoked at any time by the employer, even after the arbitration was initiated, and without notice. <u>Cheek</u>, 378 Md. at 142. "The <u>Cheek</u> Court reasoned that because the employer had sole and unlimited discretion to change the terms and rules of the arbitration agreement whenever it wished, the employer's promise to arbitrate employment disputes [was] entirely illusory, and therefore no real promise at all." <u>Katz</u>, at 34

(quoting Cheek, 378 Md. at 142) (quotations omitted). Here, unlike Noohi, there is no indication that the Trustee Defendants have "unfettered discretion to change the arbitration agreement," Noohi, 708 F.3d at 606, as the Trustees are still bound by the terms of the Declaration and, unlike Cheek, either party here could force a shareholder dispute into arbitration proceedings "meaning that the Defendants have relinquished a power of which they might otherwise have retained unfettered control." Katz, at 34 (distinguishing Cheek).

### 3. Inconsistent with Declaration

The Plaintiffs also argue that Section 3 of the Declaration states that bylaw amendments cannot be "inconsistent with law or this Declaration" and that because the Declaration is silent as to shareholder arbitration, the Bylaws are inconsistent with the Declaration. D. 41 at 25. This argument fails because, as discussed above, the bylaw amendments were incorporated by reference to the Declaration. See Wolf, 239 Md. at 27–28; Harby ex rel. Brooks, 172 Md. App. at 422–23; Spence, 65 Md. App. at 419–20. Further, the Plaintiffs have not indicated any provision in the Declaration barring the Trustee Defendants from requiring shareholder disputes to be arbitrated.

### 4. Inconsistent with Federal and Maryland Law

The Plaintiffs also assert that the arbitration provision is inconsistent with state and federal law on a number of grounds, D. 41 at 25, which the Court will address.

### i. Frustration of Shareholder Rights

The Plaintiffs argue that the Arbitration Bylaw "frustrate[s] long standing shareholder rights established by Maryland [] law that recognize the right of a shareholder to bring a derivative suit." D. 41 at 25. The crux of the Plaintiffs' argument is that the Arbitration Bylaw

essentially forecloses the Plaintiffs' ability to bring a derivative suit because to do so without the available remedy of attorneys' fees would make such suits cost-prohibitive. D. 41 at 25.

The Plaintiffs, however, rely upon cases merely allowing for Plaintiffs to receive attorneys' fees as a matter of discussion. See D. 41 at 25–26 (citing cases). Moreover, "[c]laims that arbitration agreements should not be enforced because it may deny a party a right to a jury trial or other litigation rights [] have been soundly rejected by Maryland courts." D. 45 at 17 n.3 (citing Holloman v. Circuit City Stores, Inc., 391 Md. 580, 596 (2006)) ("Numerous jurisdictions have recognized that arbitration of statutory claims does not result in the forfeiture of substantive statutory rights").

Further, to the extent the Plaintiffs argue that arbitrating their claims would be cost-prohibitive unless they are awarded fees, the Plaintiffs have not shown that arbitrating this matter will be cost-prohibitive. See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 91–92 (2000) (concluding that the party seeking to avoid arbitration of federal statutory claims bears the burden of establishing that fees are cost-prohibitive).[10]

ii.     Contrary to SEC policies and the PSLRA

The Plaintiffs next argue that the Arbitration Bylaw is "contrary to the SEC's policies underlying federal securities laws," particularly the anti-waiver provision of Section 29(a) of the Securities Exchange Act, and "frustrates shareholders' statutory rights to attorneys' fees and expenses pursuant to the Private Securities Litigation Reform Act of 1995 [], 15 U.S.C. § 78u-4(a)(6)" ("PSLRA"). D. 41 at 26. First, the Supreme Court has held that the anti-waiver

---

[10] While the Plaintiffs have submitted in support of one of their status reports an affidavit from the general counsel of the California Public Employees' Retirement System ("CalPERS"), the affidavit states that "it is typically not feasible to directly fund" "complex shareholder breach of fiduciary duty litigation." D. 94-2 at 4. The affidavit was submitted, however, in a different litigation and does not discuss whether it would be cost-prohibitive to bring the claims in this case.

provision of the Exchange Act does not apply to "procedural provisions," including compulsory arbitration. Rodriguez de Quijas v. Shearson/Am. Exp., Inc., 490 U.S. 477, 482 (1989). Second, 15 U.S.C. § 78u-4(a)(6) states only that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." The cited portion of the statute merely caps the amount of attorneys' fees to which plaintiffs are entitled and does not require that plaintiffs recover attorneys' fees.

### iii.     Unconscionability

Finally, the Plaintiffs argue that the Arbitration Bylaw is unconscionable. "Whether a valid arbitration agreement exists in the case *sub judice* 'depends on contract principles since arbitration is a matter of contract.'" Walther, 386 Md. at 425–26 (quoting Cheek, 378 Md. at 147). The Supreme Court has stated that "'generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements. . . .'" Walther, 386 Md. at 425–26 (quoting Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 687 (1996)). "Therefore, an arbitration agreement may be challenged on grounds of unconscionability . . . ." Walther, 386 Md. at 425–26.

"An unconscionable bargain or contract has been defined as one characterized by extreme unfairness, which is made evident by (1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party." Walther, 386 Md. at 426 (citations and quotations omitted). "To that end, we must consider whether the terms in the arbitration clause are so one-sided as to oppress or unfairly surprise an innocent party or whether there exists an egregious imbalance in the obligations and rights imposed by the arbitration clause." Id. at 425–26. As discussed above, the Court concludes that the Plaintiffs have failed to meet

this stringent unconscionability standard and have not shown that the Arbitration Bylaw is unconscionable, insofar as the Plaintiffs had constructive knowledge of the Bylaw and are still able to vindicate their rights through arbitration. <u>See</u> <u>Walther</u>, 386 Md. at 427 (noting that "procedural unconscionability looks much like fraud or duress in contract formation"). Moreover, the Company's shareholders have already been able to obtain favorable remedies through arbitration. <u>See</u> Plaintiffs' Status Report (D. 70 at 2) (notifying the Court that the arbitration panel in <u>Corvex</u> has invalidated a bylaw provision).[11]

For these reasons, the Court finds that the Plaintiffs are not entitled to judgment as a matter of law as to the validity of the Arbitration Bylaw.

**C.    The Court Cannot Decide on this Record Whether the Arbitration Provisions in the RMR Agreements are Enforceable**

The Plaintiffs have also moved for the Court to invalidate the arbitration provisions added to RMR's management agreements. Unlike the Arbitration Bylaw, <u>Corvex</u> and <u>Katz</u> did not decide this issue.

The parties do not dispute that the RMR management agreements include a Massachusetts choice of law provision. D. 41 at 18 n.4; D. 51 at 15 n.7. The Plaintiffs argue, however, that the "consequence as to both Maryland and Massachusetts law are consistent on the basic principles of contract law applicable here," D. 41 at 18 n.4, and analyze their arguments as to the Arbitration Bylaw and the RMR management agreements under Maryland law. <u>See</u> D. 41. RMR, however, applied Massachusetts law to its analysis. D. 51.

---

[11] To the extent the Plaintiffs argue in their reply brief that, in addition to the execution of the RMR management agreements, the Trustees engaged in self-dealing by adding the Arbitration Bylaw, D. 56 at 18, the Plaintiffs have not met their burden of proving self-dealing, for the reasons discussed below.

Regardless of whether Massachusetts or Maryland law applies, the Court concludes that the Plaintiffs have not met their burden of showing that they are entitled to judgment as a matter of law. As discussed above, the shareholders' consent to the addition of the Arbitration Bylaw was rooted in the fact that the Declaration of Trust allowed for the amendment of Bylaws and that the shareholders were presumed to have constructive knowledge of the Declaration and Bylaws. RMR argues that the arbitration agreements are valid and binding because Adam Portnoy, RMR's President and Chief Executive Officer, and John Popeo, the Company's Treasurer and Chief Financial Officer, entered into the management agreements that incorporated the arbitration provision, which were later approved by the Company's Board of Trustees. D. 51 at 18–19. The Plaintiffs counter that the management agreements had to be "ratified by disinterested directors (of which there were none) at the time it was approved," D. 56 at 21 (emphasis omitted), and that the "undisputed record demonstrate[s] that the arbitration clauses constitute improper self-dealing . . . ." D. 56 at 18. The Court does not agree.

RMR has argued that the business judgment rule protects the Defendants' decision to add the arbitration clause to the management agreements. D. 51 at 20 n.10. The Plaintiffs counter that the business judgment rule does not protect self-dealing. D. 56 at 18. The Plaintiffs are correct that generally, the business judgment rule does not apply when a plaintiff can show that directors engaged in self-dealing. Johnson v. Witkowski, 30 Mass. App. Ct. 697, 711 (1991); Shenker v. Laureate Educ., Inc., 411 Md. 317, 344 (2009). However, the Court cannot conclude on this record that the Plaintiffs have met their burden of proving that the Trustee Defendants engaged in self-dealing or other bad faith. Under Massachusetts law, for instance, "[t]he prohibition against self-dealing on the part of corporate fiduciaries requires that the corporation receive the full benefit of transactions in which an officer engages on the corporation's behalf,

without thought to personal gain . . . . For that reason, a contract for personal gain which could cause a corporate fiduciary to breach his or her fiduciary duty of loyalty to the corporation is generally held to be unenforceable as against public policy." Geller v. Allied-Lyons PLC, 42 Mass. App. Ct. 120, 122–23 (1997). While the Plaintiffs point to several allegations in support of their argument that self-dealing occurred, D. 56 at 19, the Court cannot so conclude on this record, particularly in light of the Defendants' assertion that the Board was acting independently when it approved the management agreements. D. 51 at 19. Further, not all of these facts cited by the Plaintiffs are undisputed—for example, the Defendants do not "admit that the arbitration clause was intended to discourage attorneys from agreeing to represent parties wishing to commence such a proceeding." D. 56 at 19. The document cited by the Plaintiffs in support of this contention—an annual report filed to the SEC—states only that "the inability to collect attorneys' fees or other damages may be limited in the arbitration, which may discourage attorneys from agreeing to represent parties wishing to commence such a proceeding." February 27, 2012 Form 10-K (D. 40-11 at 4).

In light of these outstanding factual issues, the Plaintiffs have not demonstrated that they are entitled to judgment as a matter of law and the Court DENIES WITHOUT PREJUDICE the motion for declaratory judgment and permanent injunction as to the enforceability of the arbitration provisions in the RMR management agreements.

**V. Conclusion**

For the reasons, the Court DENIES the motion for declaratory judgment and permanent injunction as to the Arbitration Bylaw, D. 39, but DENIES this motion WITHOUT PREJUDICE only as to the issue of whether the arbitration provisions in the RMR management agreements are valid and enforceable.

The Court ALLOWS *nunc pro tunc* the Defendants' motions for leave to file notices of supplemental authority, D. 82, D. 84 and D. 96, which the Court considered in resolving the instant motions, and DENIES AS MOOT the Plaintiffs' motions for a briefing schedule, D. 97 and D. 102. The Court also DENIES the Plaintiffs' motion for a stay and status conference, D. 103, and Plaintiffs' motion for leave to file a reply brief as to the motion for a stay, D. 106.

**So Ordered.**                                   /s/ Denise J. Casper
                                                  United States District Judge